2025 IL App (1st) 231849-U

No. 1-23-1849

Order filed February 13, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 13636 |
| | ) | |
| TYRONE HILL, | ) | Honorable |
| | ) | Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's dismissal of defendant's postconviction petition over his arguments that the armed habitual criminal statute is unconstitutional on its face and as applied to him under the Second Amendment and Illinois Constitution.

¶ 2     Defendant Tyrone Hill appeals the circuit court's second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He argues that his armed habitual criminal (AHC) conviction should be vacated because the AHC

statute (720 ILCS 5/24-1.7(a) (West 2014)) violates the United States and Illinois constitutions.[1] For the following reasons, we affirm.

¶ 3     On March 1, 2016, following a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012), defendant pled guilty to AHC in exchange for seven years in prison and the dismissal of other charges. The State's factual basis provided that defendant had two previous convictions for manufacture or delivery of a controlled substance. On July 24, 2015, police officers searched a residence and found defendant putting suspect narcotics in a toilet. The officers discovered additional suspect narcotics and a .40-caliber handgun in the residence. After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant admitted he owned the firearm. Defendant did not move to withdraw his plea or file a direct appeal.

¶ 4     On March 3, 2020, defendant filed *pro se* a petition for relief under the Act. He claimed that the court failed to advise him that he would be required to serve three years' mandatory supervised release. On July 9, 2020, the circuit court advanced the petition to the second stage of proceedings under the Act and appointed defendant counsel. On September 13, 2022, the State filed a motion to dismiss defendant's petition, arguing it was untimely and his claim was rebutted by the record. Following argument, on June 28, 2023, the court granted the State's motion and dismissed defendant's petition.

¶ 5     On appeal, defendant argues that his conviction should be vacated as the AHC statute violates his right to bear arms as provided in the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution (Ill.

---

[1] Effective January 1, 2025, the offense of AHC is now known as "Unlawful possession of a firearm by a repeat felony offender." See Pub. Act 103-822, § 20 (eff. Jan. 1, 2025).

Const. 1970, art. I § 22) under the analytical framework set forth by the United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 6     At the time defendant committed his offense, section 24-1.7(a) of the Illinois Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West 2014)) provided that a person committed AHC if he received, sold, possessed, or transferred a firearm after having been convicted two or more times of forcible felonies, certain enumerated offenses, or Class 3 or higher felonies under the Illinois Controlled Substances Act or Cannabis Control Act.

¶ 7     Defendant argues that the statute is unconstitutional on its face and as applied to him under both the Second Amendment and the Illinois Constitution. We review the constitutionality of a statute *de novo*. *People v. Johanson*, 2024 IL 129425, ¶ 9. We begin with defendant's claim that the statute on its face violates the Second Amendment.

¶ 8     A conviction based on a facially unconstitutional statute is void. See *In re N.G.*, 2018 IL 121939, ¶ 67. A defendant may raise a facial challenge at any time. *People v. Thompson*, 2024 IL App (1st) 221031, ¶ 10. However, a facial challenge is the most difficult challenge a litigant can make. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9. It requires showing that there are no circumstances under which the statute could be validly applied. *People v. Bochenek*, 2021 IL 125889, ¶ 10. "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Id.*

¶ 9     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In 2008, the United States Supreme Court issued its opinion in *District of Columbia v. Heller*, stating that the Second Amendment elevated "the right of law-abiding,

responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In 2010, the Supreme Court issued its decision in *McDonald v. City of Chicago*, in which it extended the right to keep and bear arms to the states under the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Following *Heller* and *McDonald*, courts developed a two-step test for evaluating Second Amendment challenges to firearm regulations: the court would consider whether the regulated activity fell outside the scope of the Second Amendment as the amendment was originally understood and, if not, weigh the severity of the regulation against the ends the government sought to achieve in enacting it. See *Smith*, 2024 IL App (1st) 221455, ¶ 11.

¶ 10    In 2022, the Supreme Court issued *Bruen*, in which it announced a new two-step test for evaluating the constitutionality of firearm regulations. Under *Bruen*, we first consider whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If the Second Amendment covers the conduct, the conduct is presumptively protected, and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

¶ 11    As a threshold issue, the State contends that we need not engage in a comprehensive Second Amendment *Bruen* analysis, arguing that *Bruen* validated licensing regimes for possessing and carrying firearms, and this state's licensing regime bars convicted felons from possessing or carrying firearms. See *Bruen*, 597 U.S. at 38 n.9 (condoning "shall-issue" firearm licensing regimes generally); see also 430 ILCS 65/8(c) (West 2022) (prohibiting felons from obtaining a Firearm Owners Identification Card). Thus, the State contends that *Bruen* implicitly confirmed the AHC statute's constitutionality and provides "ample grounds" to reject defendant's facial

challenge. But see *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 79 n.11 (rejecting request to bypass *Bruen* due to *Bruen*'s discussion of licensing schemes and applying *Bruen* test to AHC statute). In any event, the outcome of this appeal would not differ, because we find the AHC statute is constitutional under the analytical framework articulated in *Bruen*.

¶ 12    Turning to the *Bruen* test, we must first consider whether the Second Amendment covers the conduct at issue. *Bruen*, 597 U.S. at 24. Defendant argues that the conduct at issue is possessing a firearm and that possession is protected by the Second Amendment. The State argues that the conduct at issue is possessing a firearm after being convicted of two or more felonies and is not protected by the Second Amendment. In similar cases, we have agreed with the State. See *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-22 (finding that Second Amendment rights do not apply to felons as they are not law-abiding citizens); *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (concluding that *Bruen* applies "only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant"); see also *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-29 (following *Baker*).

¶ 13    However, defendant argues that the Supreme Court's recent opinion in *United States v. Rahimi*, 602 U.S. 680 (2024), suggests that the felon or law-abiding status of a person carrying a firearm is not relevant to *Bruen*'s first question. In *Rahimi*, the Supreme Court considered a firearm restriction against a petitioner subject to a domestic violence restraining order and found to be a credible threat to the safety of his girlfriend and child. *Id.* at 686-87, 693. The Supreme Court rejected the government's argument that the petitioner could be disarmed because he was not "responsible," a term which *Heller* and *Bruen* used "to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," although neither opinion defined the term or

indicated anything about the status of citizens who were not responsible. (Internal quotation marks omitted.) *Id.* at 701-02. Moreover, the Supreme Court in *Rahimi* proceeded directly to *Bruen*'s second step, without indicating that the petitioner's status as a person who was subject to a domestic violence restraining order or had been found to pose a threat to someone's safety had removed his possession of a firearm from the scope of the Second Amendment. *Id.* at 693-700.

¶ 14    Defendant's reading of *Rahimi* comports with our analysis in *Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89, wherein we found that the conduct at issue when discussing the AHC statute under *Bruen* is simply possessing a firearm and the defendant's felon status was irrelevant under *Bruen*'s first step. See also *People v. Doehring*, 2024 IL App (1st) 230384, ¶¶ 24-26 (in light of *Rahimi*, rejecting the argument that a person's status removed his conduct of carrying a firearm from the Second Amendment's scope); but see *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 85-89 (finding that *Rahimi* did not defeat the conclusion reached in *Baker* that the Second Amendment did not protect the right of a felon to carry a firearm).[2]

¶ 15    Nevertheless, even proceeding to *Bruen*'s second step, we would reject defendant's facial challenge. See *People v. Johnson*, 2024 IL App (1st) 231155, ¶ 24 (noting that, "regardless of the approach" concerning a person's status under the first step, "this court has—repeatedly and without exception—concluded that the [S]econd [A]mendment permits Illinois to disarm felons"). *Bruen*'s second step requires the government to show that the challenged regulation comports "with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. To do so, the government must identify historical precedent showing a tradition of comparable regulation. *Id.* at

---

[2] Unpublished decisions issued under Illinois Supreme Court Rule 23(b) on or after January 1, 2021, may be cited as persuasive authority. Ill. S. Ct. R. 23(b), (e)(1) (eff. Feb. 1, 2023).

27. The government need only identify "a well-established and representative historical *analogue*" to the challenged regulation, not an exact "*twin*." (Emphases in original.) *Id.* at 30.

¶ 16    This court determined in *Brooks* that there are sufficient historical analogues to support the AHC statute as there is a long history of legislatures categorically disarming groups of people whom they believed would not follow the law. *Brooks*, 2023 IL App (1st) 200435, ¶¶ 91-97. We noted there was "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id.* ¶ 96. For example, legislatures in the Colonial period "prescribed death or forfeiture of a person's entire estate (presumably including firearms) as punishment for numerous nonviolent crimes" and the seizure of firearms involved in minor, nonviolent offenses. *Id.* (collecting sources). We determined that, historically, the right to bear arms was "inextricably and multifariously tied to the concept of a virtuous citizenry." (Internal quotation marks omitted.) *Id.* ¶ 98. Felons "simply did not fall within the benefit of the common law right to possess arms." (Internal quotation marks omitted.) *Id.*

¶ 17    Further, the *Brooks* court noted that in *Heller*, "the Court held that the second amendment 'elevates above all other interests the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home,' " which it contrasted with " 'felons and the mentally ill,' " whom the government could prohibit from possessing firearms. (Emphasis added in *Brooks*.) *Id.* ¶ 99 (quoting *Heller*, 554 U.S. at 626, 627 n.26, 635); see also *Rahimi*, 602 U.S. at 699 (reiterating that *Heller* stated felon dispossession laws are "presumptively lawful" (internal quotation marks omitted)). The *Brooks* court also noted that in *Bruen*, the court repeatedly characterized the right to bear arms as belonging to " 'law-abiding citizens.' " *Brooks*, 2023 IL App (1st) 200435, ¶ 99 (citing *Bruen*, 597 U.S. 8-12, 15-17, 26-27, 29-32, 33-34 n.8, 37-39, 58-60, 69-71).

¶ 18 We moreover determined in *Brooks* that prohibiting felons from possessing firearms survived historical analysis even accepting that historical regulations were aimed at addressing dangerousness rather than disarming non-law-abiding citizens. *Id.* ¶¶ 101-104. Thus, the historical record and Supreme Court precedent supported the AHC statute's prohibition on possession of a firearm by the defendant as he had twice been convicted of a felony. *Id.* ¶¶ 100, 105. Accordingly, we rejected his as-applied challenge to the AHC statute. *Id.* As we found the AHC statute constitutional as applied to the defendant in *Brooks*, the facial challenge that defendant makes here must fail. See *Bochenek*, 2021 IL 125889, ¶ 10 (statute is facially constitutional only if there are no circumstances under which it could be valid); see also *Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-17 (at *Bruen*'s first step, finding AHC statute facially constitutional under the Second Amendment).

¶ 19 As to defendant's as-applied challenge, such challenge requires showing that a statute is unconstitutional under the specific circumstances of the challenging party. *Kelley*, 2024 IL App (1st) 230569, ¶ 12. Defendant argues that, even if there are historical analogues supporting the disarming of violent felons, there are none supporting the disarming of nonviolent felons. He cites federal appellate court cases such as *Range v. Attorney General United States*, 124 F.4th 218, 228-29 (3d Cir. 2024) (*en banc*), where the courts differentiated between violent and nonviolent offenders when considering the constitutionality of the federal felon-in-possession statute (18 U.S.C. § 922(g)(1) (2018)).[3] He argues that *Rahimi* found only a tradition of disarming those "who present a credible threat to the physical safety of others." *Rahimi*, 602 U.S. at 700. He notes further that, in *Mobley*, we rejected an as-applied challenge to our unlawful use of a weapon by a felon

---

[3] *Range* was issued after briefing in this appeal had concluded; we granted defendant's motion for leave to cite it as additional authority.

statute but suggested that a defendant with a nonviolent background could have succeeded. *Mobley*, 2023 IL App (1st) 221264, ¶ 30.

¶ 20 However, we rejected this distinction between a violent and nonviolent status in *Brooks*. *Brooks*, 2023 IL App (1st) ¶¶ 101-05 (finding AHC statute constitutional as applied to nonviolent felon); see also *People v. Travis*, 2024 IL App (3d) 230113, ¶ 37 (finding AHC statute constitutional "irrespective of the violent or nonviolent nature of [the defendant's] convictions"). Even if we accepted defendant's argument, we would agree with the State that defendant's as-applied challenge is forfeited as he failed to raise the issue in the circuit court and develop an adequate record for our review.

¶ 21 The record here provides no indication as to whether the circumstances of the convictions underlying defendant's AHC offense, prior manufacture or delivery of a controlled substance, were actually nonviolent. See *Johnson*, 2024 IL App (1st) 231155, ¶ 28 (noting that drug crimes are associated with violence). Under similar circumstances, we have found this issue forfeited. *Id.* ¶¶ 27-28; *People v. Shannon*, 2024 IL App (1st) 230042, ¶¶ 23-24.[4] We do the same here.

¶ 22 Defendant next contends that the AHC statute violates article I, section 22, of the Illinois Constitution, both facially and as applied to him. That section provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22.

¶ 23 Our supreme court has stated that the phrase " 'the individual citizen' " broadened "the scope of the right to bear arms from a collective one applicable only to weapons traditionally used

---

[4] We issued *Shannon* on November 8, 2024, the same day defendant filed his reply brief, and *Johnson* on December 20, 2024.

by a regulated militia [citation] to an individual right covering a wider variety of arms." *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984). Defendant argues that the Illinois Constitution therefore provides greater protection than the Second Amendment.

¶ 24 The court in *Travis* faced the same argument defendant raises and, relying on *Kalodimos*, disagreed. *Travis*, 2024 IL App (3d) 230113, ¶ 42. The *Travis* court noted that the phrase, "[s]ubject only to the police power" was intended to limit the liberty afforded by article I, section 22, of the Illinois Constitution. (Internal quotation marks omitted.) *Id.* ¶ 41 (citing *Kalodimos*, 103 Ill. 2d at 491). Moreover, our supreme court found in *Kalodimos* that the police power provides "an extraordinary degree of control over the possession and use of arms due to the extraordinary threat to the safety and good order of society," and allows for laws "restraining or prohibiting anything harmful to the welfare of the people." (Internal quotation marks omitted.) *Id.* (citing *Kalodimos*, 103 Ill. 2d at 491-92, 496). *Travis* concluded that the AHC statute was a proper exercise of the state's police power and rejected the defendant's facial and as-applied challenges. *Id.* ¶ 43; see also *Kelley*, 2024 IL App (1st) 230569, ¶¶ 25-27 (same).

¶ 25 Defendant argues that *Kalodimos* does not control here because the record of the Constitutional Convention does not support the contention that the Illinois General Assembly intended to disarm certain categories of people rather than regulate certain types of arms. He further contends that the felon dispossession laws in effect at the time of the Convention did not allow for permanently disarming felons. However, we noted in *Kelley* that "[n]othing" in the record of proceedings from the Convention suggested that the differences between article I, section 22, of the Illinois Constitution and the Second Amendment "were intended to protect a convicted felon's right to bear arms." *Kelley*, 2024 IL App (1st) 230569, ¶ 25. We decline to depart from

*Kelley* and *Travis*. See *Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 92, 97-98 (following *Travis* and *Kelley* and finding AHC statute constitutional over defendant's argument that record of Constitutional Convention did not reflect concern with regulating possession by certain people and contemporaneous laws did not permanently disarm felons). Accordingly, we reject defendant's facial challenge under the Illinois Constitution.

¶ 26 As to defendant's as-applied challenge under article I, section 22, of the Illinois Constitution, it is again premised on the assertion that, even if the AHC statute is facially constitutional, it is only constitutional as applied to violent felons and his predicate felonies were nonviolent. The State argues defendant forfeited this claim by failing to raise it below. We agree, as the record is silent as to defendant's criminal history and the circumstances regarding defendant's predicate felonies, and therefore insufficient to determine whether they were nonviolent. *Cf. Kelley*, 2024 IL App (1st) 230569, ¶ 27 (rejecting as-applied challenge under Illinois Constitution because, *inter alia*, the defendant's history included violent offenses); *Travis*, 2024 IL App (3d) 2301131, ¶ 43 (rejecting as-applied challenge under Illinois Constitution as record showed the defendant had been convicted of "violent acts"). Thus, his as-applied challenge is forfeited. See *Johnson*, 2024 IL 231155, ¶¶ 27-28; *Shannon*, 2024 IL App (1st) 230042, ¶¶ 23-24.

¶ 27 In sum, we reject defendant's facial challenges to the AHC statute under the Second Amendment of the United States Constitution and article I, section 22, of the Illinois Constitution. We find his as-applied challenges forfeited. Accordingly, we affirm the circuit court's judgment dismissing his postconviction petition.

¶ 28 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 29    Affirmed.