2025 IL App (1st) 240467-U

FOURTH DIVISION filed:
April 24, 2025

No. 1-24-0467

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 12567 |
| | ) | |
| CURTIS McTIZIC, | ) | Honorable |
| | ) | Mary M. Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford concurred in the judgment.
Justice Ocasio specially concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The defendant fails to demonstrate that the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2012)) is facially unconstitutional under the United States and Illinois Constitutions because the second amendment of the United States Constitution does not apply to felons like the defendant and because article I, section 22, of the Illinois Constitution allows the state to exercise its police power to restrict felons' ability to possess firearms.

¶ 2    The defendant, Curtis McTizic, appeals a circuit court order denying his petition for relief

from judgment filed under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS

5/2-1401 (West 2022)). On appeal, the defendant abandons the grounds for relief cited in his section 2-1401 petition and instead presents a new argument that his armed habitual criminal (AHC) conviction should be vacated because the AHC statute (720 ILCS 5/24-1.7 (West 2012)) under which he was convicted is facially unconstitutional under both the United States and Illinois Constitutions. We see no merit to his arguments and affirm the denial of his motion.

¶ 3      In 2014, the defendant was found guilty of being an armed habitual criminal for possessing a firearm after having been previously convicted of two qualifying predicate felonies, and the circuit court sentenced him to 18 years in prison. We affirmed his conviction and sentence on direct appeal. See *People v. McTizic*, 2016 IL App (1st) 142198-U (unpublished order under Supreme Court Rule 23).

¶ 4      In July 2023, the defendant filed the instant petition for relief from judgment under section 2-1401, arguing that his conviction should be vacated because the predicate convictions underlying his AHC conviction would not be qualifying felonies under current law. The circuit court denied the petition, and this appeal follows.

¶ 5      On appeal, the defendant abandons the argument that he made below and instead presents a new argument that his AHC conviction should be vacated because the AHC statute is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). Although the State asserts that the defendant's appellate argument has been forfeited because he did not present it below, a conviction based on a facially unconstitutional statute is void (see *In re N.G.*, 2018 IL 121939, ¶ 37) and a defendant may raise a facial challenge at any time (*People v. Thompson*, 2015 IL 118151, ¶ 32). Indeed, "[a] void order may be attacked at any time or in any

court, either directly or collaterally. An argument that an order or judgment is void is not subject to waiver." *People v. Thompson*, 209 Ill. 2d 19, 27 (2004). Accordingly, the defendant may raise his facial challenge to the constitutionality of the AHC statute for the first time on appeal.

¶ 6     "Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation." *People v. Bochenek*, 2021 IL 125889, ¶ 10 (citing *People v. Coty*, 2020 IL 123972, ¶ 22). This burden is "particularly heavy" when a party raises a facial challenge to a statute, as "[a] statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid." *Id.* (citing *People v. Eubanks*, 2019 IL 123525, ¶ 34). "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Id.* (citing *People v. Rizzo*, 2016 IL 118599, ¶ 24).

¶ 7     The AHC statute provides that it is a Class X felony to receive, sell, possess, or transfer any firearm if you have previously been convicted of two or more qualifying offenses.[1] 720 ILCS 5/24-1.7 (West 2012). The defendant asserts that this restriction on his right to possess a firearm is unconstitutional under the second amendment of the United States Constitution and the two-step test recently established by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). There, the Court explained that we evaluate the constitutionality of a law under the second amendment by first deciding whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 24. If it does, then the constitution "presumptively protects that conduct" and "[t]he government must then justify its regulation by

---

[1] Effective January 1, 2025, the offense of being an armed habitual criminal has been renamed "unlawful possession of a firearm by a repeat felony offender." See Pub. Act 103-822, § 20 (eff. Jan. 1, 2025).

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* The defendant argues that the second amendment covers his possession of a firearm and that our country's historical tradition does not justify permanently disarming an individual solely based on his past criminal conduct.

¶ 8    The defendant is not the first to contest the constitutionality of the AHC statute under *Bruen*. Rather, this court has already heard and rejected *Bruen*-based challenges to the AHC statute on numerous occasions. See, *e.g.*, *People v. Daniels*, 2025 IL App (1st) 230823; *People v. Kelley*, 2024 IL App (1st) 230569; *People v. Travis*, 2024 IL App (3d) 230113; *People v. Brooks*, 2023 IL App (1st) 200435; *People v. Hill*, 2025 IL App (1st) 231849-U (unpublished order under Supreme Court Rule 23); *People v. Thomas*, 2024 IL App (4th) 240315-U (unpublished order under Supreme Court Rule 23); *People v. Whitehead*, 2024 IL App (1st) 231008-U (unpublished order under Supreme Court Rule 23). The defendant attempts to distinguish this case from those prior decisions by arguing that, even though courts have concluded that our nation's history generally supports placing restrictions on felons' ability to possess firearms, that history does not support *permanent* disarmament, an argument that had not been advanced in a prior case in this court. However, since the filing of the defendant's initial brief, this court rejected that argument as well in *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 19. Moreover, the defendant's argument that our nation's history of firearm regulation does not support the permanent disarmament of felons concerns the second step of the *Bruen* analysis, and we do not reach that step because the second amendment does not protect felons, and the *Bruen* test, therefore, does not apply at all. See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of

'law-abiding citizens,' and not felons like defendant."); *Kelley*, 2024 IL App (1st) 230569, ¶ 16 ("In this case, we need not conduct an historical analysis, as the Supreme Court has stated that only "ordinary, law-abiding citizens have a *** right to carry handguns publicly for their self-defense.").

¶ 9    Indeed, in its decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. Chicago*, 561 U.S. 742 (2010), and *Bruen*, the Supreme Court has made clear that the second amendment only applies to "law-abiding" citizens, and not to felons like the defendant. Specifically, in *Heller* and *McDonald* the Court held that "the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense." (Emphasis added.) *Bruen*, 597 U.S. at 8-9; see also *Heller*, 554 U.S. at 626, 635 (stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" and that the second amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home"); *McDonald*, 561 U.S. at 786 ("repeat[ing] [*Heller*'s] assurances" about the validity of restrictions on firearm possession by felons). In *Bruen*, the Court concluded that the same protection also applies to the possession of a handgun in public, holding that the New York law at issue "violate[d] the Fourteenth Amendment in that it prevent[ed] *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms." (Emphasis added.) *Id.* at 71. That use of "law-abiding" was clearly intentional, as the majority opinion used that term numerous times in its analysis. See *Daniels*, 2025 IL App (1st) 230823, ¶ 39 (observing that the majority in *Bruen* used "law-abiding" nearly 20 times, and stating, "we presume the [*Bruen*] court's inclusion of ["law-abiding"] in its holding is not superfluous or irrelevant, especially given its repeated use").

¶ 10  The Supreme Court's statements in *Heller*, *McDonald*, and *Bruen* make clear that "the second amendment does not presumptively cover a felon's possession of a firearm." *Id.*; see also *Kelley*, 2024 IL App (1st) 230569, ¶ 17 ("There is little to expound here: by its plain language, the Supreme Court explicitly sanctioned the prohibition on the possession of firearms by felons."). Accordingly, the two-part test announced in *Bruen* does not apply to a law restricting a felon's possession of a firearm. See *Gray*, 2025 IL App (1st) 191086-B, ¶ 23 ("*Bruen* does not apply to the possession of firearms by felons."); *Daniels*, 2025 IL App (1st) 230823, ¶ 39 ("The plain, clear, and repeated language of the justices in the [*Bruen*] majority informs us that felons are outside the box drawn by *Bruen*."); *Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant.").

¶ 11  The defendant contends that these cases declining to apply the *Bruen* test to second-amendment challenges raised by felons are wrongly decided and that we should instead follow the decision in *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, in which a panel of this court applied the two-step *Bruen* test to the AHC statute and held that a person's status as a felon was irrelevant prior to the second step of the *Bruen* analysis. We are unpersuaded by *Brooks*' view of the issue, which is directly at odds with the *Bruen* Court's statement that the second amendment only protects law-abiding citizens. Rather, as we and most other panels have concluded, the *Bruen* test does not apply to restrictions on felons' ability to possess a firearm. See *People v. Boss*, 2025 IL App (1st) 221855, ¶ 33 (disagreeing with *Brooks*' conclusion and observing that "the majority of panels who have examined the holdings in *Baker* and *Brooks* *** have elected to follow *Baker* and agree that the second amendment does not apply to a felon's firearm possession"); *People v. Muhammad*,

2023 IL App (1st) 230121-U, ¶ 23 (unpublished order under Supreme Court Rule 23) (finding *Brooks* to be an "overly narrow view of the first step of the *Bruen* analysis that the Supreme Court did not intend," as evidenced by the *Bruen* court's repeated use of "law-abiding" in its analysis).

¶ 12    The defendant also argues that the Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024), supports his contention that felons are not excluded from the second amendment, but we do not share his interpretation of that decision. In *Rahimi*, the Court rejected a facial challenge to a federal statute that prohibited firearm possession by a person subject to a domestic violence restraining order. *Id.* at 699. In doing so, the court dismissed "the Government's contention that Rahimi may be disarmed simply because he is not 'responsible,' " with the Court observing that "responsible" was a vague term. *Id.* at 701. However, while rejecting the idea that a person can be disarmed for merely being irresponsible, the Court did not extend that holding to felons. Rather, notably, it reiterated *Heller*'s statement that prohibitions on the possession of firearms by felons are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626, 627 n.26). Accordingly, *Rahimi* does not help the defendant. See *Boss*, 2025 IL App (1st) 221855, ¶ 28 (observing that *Rahimi* did not alter its conclusion that "the second amendment does not apply to a felon's firearm possession"); *People v. Mallery*, 2024 IL App (4th) 231397-U, ¶ 27 (unpublished order under Supreme Court Rule 23) ("*Rahimi* does not necessitate a departure from our approach in *Burns*" that a felon's possession of a firearm is not conduct protected under the second amendment); *People v. Dillard*, 2024 IL App (4th) 231090-U, ¶ 26 (unpublished order under Supreme Court Rule 23) ("Rather than undermining this court's analysis in *Burns* and our other prior decisions, the Supreme Court's decision in *Rahimi* reinforces our analysis" that the analytical

framework set forth in *Bruen* does not apply to laws restricting the possession of firearms by felons).

¶ 13    Accordingly, because the second amendment does not apply to a felon's possession of a firearm and the *Bruen* test is, therefore, inapplicable, we reject the defendant's argument that the AHC statute is facially unconstitutional under the United States Constitution and *Bruen*.

¶ 14    The defendant also asserts that the AHC statute is facially unconstitutional under article I, section 22, of the Illinois Constitution, which provides that, "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." The defendant argues that the use of "individual citizen," in contrast to the use of "the people" in the second amendment, (1) indicates an intention to broaden the scope of the right to keep and bear arms and (2) further endows all citizens, including felons, the presumptive right to possess a firearm. While he is correct on the former of those points (see *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984)), his latter contention ignores another distinguishing feature of the provision, which is that " 'the possession and use of arms is subject to an extraordinary degree of control under the police power.' " *Id.* at 492 (quoting Committee Report, 6 Proceedings 88). That extraordinary degree of control "has long included 'prohibitions on the possession of firearms by felons.' " *Kelley*, 2024 IL App (1st) 230569, ¶ 25 (citing *McDonald*, 561 U.S. at 786; *Heller*, 554 U.S. at 626-27). In *Kelley*, this court rejected an identical facial challenge to the AHC statute under the Illinois Constitution, observing that "nothing in Illinois's post-*McDonald* jurisprudence suggests any departure from the long-established principle that the state's police power includes the ability to control who may bear arms." *Id.* ¶ 26. The defendant's only rebuttal to this precedent is to dismiss it as having relied on a pre-*Bruen* premise. However, we have already recognized that *Bruen*, like

*Heller* and *McDonald* before it, allows for restrictions on the ability of felons to possess firearms, and the defendant does not explain how and why he believes *Bruen* should change our analysis of this issue. Because he provides no persuasive discussion of the significance of the police power component of article I, section 22, the defendant has failed to demonstrate that *Kelley* was wrongly decided and that the AHC is facially unconstitutional under the Illinois Constitution.

¶ 15   In sum, the defendant has not shown that the AHC statute is facially unconstitutional under either the United States or Illinois Constitutions. Accordingly, we affirm the denial of his section 2-1401 petition challenging his conviction under the AHC statute.

¶ 16   Affirmed.

¶ 17    JUSTICE OCASIO, specially concurring:

¶ 18   I agree that section 24-1.7 of the Criminal Code of 2012 (720 ILCS 5/24-1.7 (West 2012)) does not, on its face, violate the United States or Illinois Constitutions. But I cannot agree with the view that conviction of a felony renders an individual no longer one of "the people." Parenthetically, the term " 'the people' *** refers to a class of persons who are part of a national community." *U.S. v. Verdugo-Urquidez,* 494 U.S. 259, 265 (1990). If interpreted strictly, this would imply that individuals with a felony conviction in their history would be deprived of their First Amendment right to peacefully protest, as well as any protection under the Fourth Amendment. See U.S. Const., amend. I (protecting "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances"); U.S. Const., amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). That statement appears to be clearly incorrect. Section 24-1.7 does not infringe on the right to bear arms, as prohibiting felons from possessing firearms

aligns with historical tradition (the second step of the *Bruen* analysis). See, *e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (identifying "longstanding prohibitions on the possession of firearms by felons" as one example of a presumptively constitutional regulation); see also *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33 (affirming constitutionality of section 24-1.7 based on "a history and tradition dating back to the founding era of identifying dangerous individuals and disarming them"); *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 96 (noting "the widespread acceptances of the legislatures' authority to disarm felons" in the founding era).