2025 IL App (1st) 232429

No. 1-23-2429

THIRD DIVISION
July 9, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 21715; 13 CR 07558 |
| | ) | |
| THOMAS GRACE, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Petitioner-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1       *Held*: We affirm the trial court's denial of defendant's petition.

¶ 2       Defendant Thomas Grace appeals the trial court's denial of his petition for relief from judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2024)). Defendant's petition challenged his 2008 and 2014 convictions for unlawful

use of a weapon by a felon (UUWF) and for being an armed habitual criminal (AHC),[1] respectively, as being unconstitutional under the Second Amendment. On appeal, defendant contends that the trial court erred in denying his petition because the felon disarmament statutes are unconstitutional facially and as applied to him, given that his underlying felony was non-violent and that there is no historical tradition of permanently disarming felons. For the following reasons, we affirm.

¶ 3                                            I. BACKGROUND

¶ 4      On September 5, 2002, defendant was convicted of a felony under section 407 of the Illinois Controlled Substances Act for heroin possession (720 ILCS 570/407(b)(2) (West 2000)). On December 23, 2008, defendant was convicted of a felony under section 24-1.1 of the Criminal Code of 1961 for UUWF (720 ILCS 5/24-1.1(a) (West 2006)). This charge was predicated on his 2002 felony for heroin possession. On July 1, 2014, defendant was convicted of a felony under section 24-1.7 of the Criminal Code of 2012 for being an AHC (720 ILCS 5/24-1.7(a) (West 2012)). This charge was predicated on both his 2002 heroin possession conviction and his 2008 UUWF conviction.

¶ 5      On August 31, 2023, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code. He challenged his UUWF and AHC convictions under the Second Amendment, arguing that the disarmament statutes were facially unconstitutional and unconstitutional as applied to him as a non-violent felon. He also argued that the UUWF and AHC convictions were void *ab initio* pursuant to *People v. Aguilar*, 2013 IL 112116. On October

_____

[1] Effective January 1, 2025, 720 ILCS 5/24-1.7 is known as the "[u]nlawful possession of a firearm by a repeat felony offender" statute rather than the AHC statute. The only other revision aside from the title is the replacement of "unlawful use" with "unlawful possession" in the body of the statute.

20, 2023, the trial court denied his petition on the basis that his convictions were not *Aguilar* offenses.

¶ 6     In a letter to the circuit clerk, defendant stated that he did not receive notice of the denial until his counselor handed him the order on November 13, 2023. As a result, he placed his notice of appeal and a signed certificate of service in the Metropolitan Correctional Center mail on November 16, 2023. The envelope containing the notice of appeal was postmarked November 17, 2023, but the notice of appeal was not filed until November 21, 2023. The trial court thus denied appointment of counsel on December 1, 2023, because the notice of appeal appeared untimely. The court, however, vacated that order on December 15, 2023, finding defendant's notice of appeal was permitted under the "mailbox rule" because of the signed certificate of service dated November 16, 2023.

¶ 7     This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9     On appeal, defendant contends that Illinois' UUWF and AHC statutes violate the Second Amendment facially and as applied to him as a non-violent felon pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022). Defendant argues that there is no historical analogue for imposing a lifetime ban on non-violent felons from exercising their Second Amendment right. The constitutionality of a statute is an issue this court reviews *de novo*. *People v. Baker*, 2023 IL App (1st) 220328, ¶ 21.

¶ 10    We acknowledge that the defendant challenges the constitutionality of two separate statutes. However, the UUWF and AHC statutes each categorically ban non-violent convicted felons from possessing firearms. As such, our analysis will be the same for both of the challenged felon disarmament statutes, and there is no need for two separate analyses.

¶ 11     The *Bruen* Court outlined a two-step analysis for determining whether a firearm regulation is constitutional. First, a court must conclude whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If the plain text does not cover that conduct, the statute regulating such conduct does not violate the Second Amendment. *Id.* at 18.

¶ 12     If, however, the Second Amendment does cover the regulated conduct, the court moves to the second step of the *Bruen* test. *Id.* at 24. Here, the government must demonstrate that the statute "is consistent with the Nation's historical tradition of firearm regulation" because "the Constitution presumptively protects that conduct." *Id.*. Courts need only "identify a well-established and representative historical *analogue*, not a historical *twin*" in order to find a challenged statute is constitutional. (Emphasis in original.) *Id.* at 30.

¶ 13     Following *Bruen*, our courts have uniformly rejected defendant's same facial and as applied constitutional challenges to the UUWF and AHC statutes. See, *e.g.*, *People v. Daniels*, 2025 IL App (1st) 230823, ¶ 43; *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 48; *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶ 88-89; *People v. Carldwell*, 2024 IL App (1st) 230968-U, ¶ 25; *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 30; *People v. Wright*, 2024 IL App (1st) 230428-U, ¶ 25; *People v. Doehring*, 2024 IL App (1st) 230384, ¶ 37; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 42-43; *People v. Muhammad*, 2023 IL App (1st) 230121-U, ¶ 24; *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 35; *Baker,* 2023 IL App (1st) 220328, ¶ 41; *People v. Brooks*, 2023 IL App (1st) 200435 ¶ 105.

¶ 14     These cases have utilized one of two approaches to find these felon disarmament statutes constitutional. The first approach ends its analysis at the first step of the *Bruen* test, finding that the regulated conduct – felon firearm possession – is not protected by the Second Amendment.

See *People v. Burns*, 2015 IL 117387, ¶ 42 (finding that "our appellate court has upheld as constitutional Illinois statutes governing the possession of weapons by felons on grounds that the Second Amendment is not implicated"); *Gray*, 2025 IL App (1st) 191086-B, ¶ 20; *Whitehead*, 2024 IL App (1st) 231008-U (same), ¶ 88-89; *Kelley*, 2024 IL App (1st) 230569, ¶ 16; *Muhammad*, 2023 IL App (1st) 230121-U, ¶ 24; *Mobley*, 2023 IL App (1st) 221264, ¶ 35; *Baker* 2023 IL App (1st) 220328, ¶ 37 (finding that "[t]he *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant").

¶ 15    The second approach finds that felon disarmament statutes regulate ordinary firearm possession rather than felon firearm possession. As such, the conduct – possession – is covered by the plain text of the Second Amendment and a person's prior felony conviction should be analyzed under the second step of the *Bruen* test. See *Doehring*, 2024 IL App (1st) 230384, ¶ 24 (concluding that the reasoning in *Brooks*, "which looked to the conduct being proscribed – namely, possession of a firearm instead of the circumstances surrounding that possession*** better comports with the requirements in *Bruen*"); *Travis*, 2024 IL App (3d) 230113, ¶ 25 (same); *Brooks*, 2023 IL App (1st) 200435, ¶ 89 (finding that "the first step asks only whether 'the Second Amendment's plain text covers an individual's conduct' " and "does not contemplate the actor or the subject").

¶ 16    Courts utilizing this second approach ultimately find that laws regulating a felon's possession of firearms are constitutional because there is a historical tradition of disarming felons. *Doehring*, 2024 IL App (1st) 230384, ¶ 37; *Travis*, 2024 IL App (3d) 230113, ¶ 37; *Brooks*, 2023 IL App (1st) 200435, ¶ 1.

¶ 17 Defendant maintains that the second approach is correct and argues the statutes are facially unconstitutional because there is no historical analogue for permanently disarming felons. His as-applied challenge centers on his contention that there is a carve-out in felon disarmament statutes for non-violent felons. We find that under defendant's preferred approach, the UUWF and AHC statutes are constitutional.

¶ 18 It is important to note that neither the UUWF nor the AHC statutes impose a permanent ban on felon firearm possession. A convicted felon may lawfully possess a firearm if he or she "has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act." See 720 ILCS 5/24-1.1(a) (West 2024); see also *United States v. Calhoun*, 710 F. Supp. 3d, 575,593 (N.D. Ill. 2024) (finding that a felon can regain the right to own firearms via expungement or a pardon.).

¶ 19 Accordingly, there is no need to search for a historical analogue of a lifetime ban, because there is no such ban here. We therefore turn to defendant's contention that the UUWF and AHC statutes are unconstitutional as applied to him as a non-violent felon.

¶ 20 *Brooks* thoroughly examined – and rejected – defendant's precise argument, concluding that a non-violent felon's as-applied challenge to the AHC statute failed because his prior felony convictions, "albeit nonviolent ones," indicated that he was not "a law-abiding citizen." *Brooks*, 2023 IL App (1st) 200435, ¶ 100; *Calhoun*, 710 F. Supp. 3d at 596 (N.D. Ill 2024) (affirming AHC conviction of non-violent offender); *People v. Johnson*, 2025 IL App (3d) 240185-U, ¶ 12 (same); *People v. Hill*, 2025 IL App (1st) 231849-U, ¶ 20 (same); *People v. Daniels*, 2025 IL App (1st) 230823, ¶ 43 (same); *People v. Travis*, 2024 IL App (3d) 230113, ¶ 37 (same); *People v. Montgomery*, 2016 IL App (1st) 142143, ¶ 19 (same).

¶ 21    As for historical analogues, *Brooks* held that founding-era "legislatures prescribed death or forfeiture of a person's entire estate (presumably including firearms) as punishment for numerous non-violent crimes (including deceit, forgery, and wrongful taking of property)." *Brooks*, 2023 IL App (1st) 200435, ¶ 96.

¶ 22    *Brooks* additionally identified historical analogues that disarmed religious, racial, and political minority groups based on the assumption that their status signified an inclination to disobey the law. *Id.* at ¶ 94.

¶ 23    Though it is intuitively uncomfortable to draw on legislation that could not withstand present day Fourteenth Amendment scrutiny, "*Bruen* directs courts to examine historical analogues to determine the 'historical understanding of the right to keep and bear arms,' *** and laws disarming enslaved people, religious minorities, and Native Americans – however repulsive to modern sensibilities – fit that bill." *United States v. Jackson*, 700 F. Supp. 3d 651, 660 (N.D. Ill. 2023).

¶ 24    Even without status-based restriction analogues, "the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society." (Internal quotation marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Violent and non-violent felons alike have demonstrated disrespect for legal norms, as evidenced by their felony convictions.

¶ 25    Finally, in *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008), the Supreme Court simply stated, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***." The Supreme Court never qualified the term "felon" or otherwise limited it to violent felons, indicating that prohibitions on the possession of firearms by any type of felon are constitutional.

¶ 26    In summary, legislatures have historically disarmed groups that have a presumed or demonstrated disrespect for the law, and past violent and non-violent felony convictions are evidence of one's disrespect for the law.

¶ 27                                    III. CONCLUSION

¶ 28    For the forgoing reasons, we find that the UUWF and AHC statutes are constitutional on their faces and as applied to defendant in this case.

¶ 29    Affirmed.